Good morning may it please the court my name is Jia Kim appearing on behalf of appellant Henry Lee Monday. 18 U.S.C. 1709 makes it unlawful for a postal employee to quote embezzle mail or to quote steal abstract or remove any article or thing from inside a piece of mail. It's not disputed that the first part of the statute to embezzle requires some sort of specific felonious intent but the question in this case is whether the second portion of the statute also requires specific intent to steal for the steals abstracts or removes language. More specifically the question is whether the term removes should be construed so broadly as to make steals and abstracts redundant and whether that lowest common denominator of intent should govern the interpretation of the that I would have since you want to import the intent to deprive if since it's written in the disjunctive wouldn't the word remove be surpluses then I mean in terms of the statutory construction why would you add the word remove if it's supposed to mean the same as steal. There is I think under either interpretation ours or the government's there is an element of redundancy to this statute specifically the term abstracts can mean to steal or to remove. We think it means to steal the government thinks it means to remove either way abstracts is already redundant. To get more to the core of your question though when there are a list of words in this statute one of the canons of construction this court looks at or courts look at to resolve that question to resolve that redundancy is the rule of their associates or the rule that a word in a list should be construed in light of the words it's associated with. And in Gustafson the Supreme Court held that not only should that word be construed in light of the other words in the list substantively it should be construed in a way there the word was communication that wouldn't swamp the rest of the list or wouldn't have such a broad meaning that the rest of the rule would become redundant. And here if mere removal is sufficient to violate the statute there would be no use for the word steals which would be particularly odd in a statute that governs theft of mail matter where that crime would essentially be reduced to the mere removal of mail without any criminal intent whatsoever. Another other rules of construction also support this view. There's the Morris Seth decision in which the Supreme Court held that sort of established this kind of background rule in construing criminal statutes that we should construe criminal statutes to have an element of specific intent or a criminal mens rea element. And the Supreme Court stated in Morris Seth quote if one crime without intent has been smuggled into a section whose dominant offenses do require intent it was put in ill-fitting and compromising company. We would submit that the dominant offenses in 1709 are embezzlement and theft of mail matter, stealing of mail matter and that the removal if removal is not read to have a similar criminal intent element then it would again dominate both the statute and the steals. It's important to note in this case that either part of this statute could have been applied to Mr. Mundy's conduct. And the Tenth and the Fourth Circuit have already decided this case against the argument that you're making. Is that correct? That's correct. Do you have any circuits that have decided in your favor? I would say the Eighth Circuit. It's an old case of Parara v. United States. It's from 1915 in which the Eighth Circuit held for the predecessor version of the statute which was 18 U.S.C. 318 that the defendant in that case had for another reason stated or argued that 318 was more than simple larceny because of the abstracts or removes language. The Eighth Circuit said no, 318 which is now 1709 was still simple larceny. And that was the abstracts or removes didn't add anything to the statute because it said most obviously there can be no stealing without first an abstraction or removal. So it did kind of view those words as surplusage, but it held that you could not expand the meaning of the statute or there was no intent to expand the meaning of the statute through the addition of those words. Well, didn't the government in its brief cited to the congressional record, I think, in terms of stating that Congress intended, that the congressional record indicated that Congress intended to criminalize the knowing and unauthorized opening of letters or the taking of anything from the mail and not just stealing? The legislative history of the government cites, I think it's on page 33 of their brief, it's a bit misleading because the government states that's the legislative history of this predecessor statute, 318, which when it was recodified in 1948 when the criminal code was recodified, that 318 offense was split into two separate offenses. Part of it went into current 1703, which involves ---- But Tahara interpreted which statute? Tahara? Tahara, I think that you cited. Tahara interpreted 318, but it was the abstracting portion, not the delaying, destroying, and opening section. That's now a separate offense under 1703. Mr. Munway presumably could have been charged under 1703, which does criminalize the opening of a mail bag, but that part of the legislative history cited there doesn't apply to 1709. It applies to what is now 1703. The other ---- I had a question. Even if we interpreted the statute the way that you said, the facts of this case, why wouldn't it just be harmless error? Because it, you know, he took the money out, he went in, bought some stuff to eat, and, you know, it's he ---- it doesn't seem consistent with, you know, that he was trying to catch the attention of people. Well, Your Honor, there is a case, Dobbins, in which, you know, a similar intent requirement was argued, and it was held to be harmless error. The difference between that case, Dobbins, and this case is that Dobbins is a sufficiency case. Here we're just challenging the jury instruction. We're not saying, as was argued below, that the evidence wouldn't necessarily be sufficient to convict, even under our interpretation of the statute. What we're arguing is that the jury should get the opportunity, under proper instructions, to, you know, place Mr. Mundy's testimony in the framework of the statute as properly construed. And if there are no further questions, I'm sorry to interrupt. I just have one. Maybe it's more of a policy question, but it seems to me that, first of all, you're not disputing that Section 1709 has a knowing element, and that instruction was, in fact, given, correct? Yes. Okay. It seems to me that given that postal employees have a certain amount of public trust imposed in them, that Congress may have intentionally utilized a knowing mens re as opposed to a higher standard of mens re or the requirement you're seeking to impose on the statute, that it was removal for, you know, permanent possession. Just because of the nature of what a postal service employee does, handling other people's mail, removing contents from that mail would seem to be a pretty serious act. I think you can see evidence of that intention to protect the integrity of the mail in other statutes, specifically Section 1702 and 1703, 1703 being the delay, destruction, and near opening of a letter or a mail bag by a postal employee. And the district court in Russia, in the Southern District of Iowa, made this distinction between 1702 and 1703, which are the sort of integrity of the mail statutes, and 1708 and 1709, which are theft statutes. One applies to postal employees, one applies to the public at large. Those two statutes have the same essential statutory verbs of stealing and taking, and those are more larceny offenses. Okay. Thank you. May it please the Court. Good morning, Your Honor. Good morning, Your Honors. Christine Bautista on behalf of the United States. The main issue in this case is whether the defendant's proposed jury instruction was a correct statement of the law. And the answer is no. Okay. So why don't we, why don't you start with where the opposing counsel left off, that as United States v. Rush says that 1702 and 1703 are concerned with the integrity of the mail, whereas 1708 and 1709 are more ordinary criminal theft statutes, which should require specific intent. Yes, Your Honor. The government's position is that the Southern District of Iowa and Rush got it wrong. In categorizing 1702 and 1703 as the same offense, it overlooks the fact that 1703 and 1709 clearly apply only to postal service employees, which Your Honor was getting at, the point that postal service employees are in a position of trust. Under 1703, they cannot open the mail. Surely, under 1709, they cannot open or take from the mail. Well, if, but then the plain language of 1709 doesn't contain any specific men's right, even though a knowing instruction was given. So does that mean it's a strict liability crime? The government's position is that it is a general intent crime. It is not a strict liability crime because it does require a knowing element. Well, how do I know that? It doesn't say it. The language knowing isn't in it, right? Correct, Your Honor. So how do I know that? Under Carter v. United States, which the Supreme Court decided, and it also relied on U.S. v. Lewis, which the government cited in footnote 20 of its brief, in that case, the Supreme Court decided that 18 U.S.C. section 2113A, which is bank robbery, it also does not require any specific intent to permanently deprive. It does not use the language robbery, and it does not contain the word larceny. And the Supreme Court held that the general intent suffices the men's right element, that that is sufficient to distinguish between conduct that is a crime versus conduct that does not constitute a crime. So the government's position is that the men's right element that should be read into Section 1709 is general intent, a knowing requirement, which the jury was properly instructed on. Well, now, in terms of if we assume just for purposes of argument right now that specific intent is required under 1709, how would the failure to instruct the jury on the element be harmless when the jury was permitted to convict Mr. Munday under a less culpable men's right? I mean, because his defense really, he doesn't really under, if it's just knowing the element forward, isn't really a defense under the law if, as he was, as the jury was instructed. So how could the error be harmless? Your Honor, the error was harmless because the, even if specific intent to permanently deprive was a required element under the statute which he was convicted of, there was overwhelming and uncontradicted evidence that the defendant did not intend to return the owner, which in this case was Gracie Wilson, the sender, Gracie Wilson, Apprentice, Mississippi. There was testimony at trial by a Postal Service employee, Regina Seabury and Michelle Walker, that the process is for the defendant, if the address is undeliverable, the defendant was required to stamp it, return to sender, and the sender was Gracie Wilson, Apprentice, Mississippi. She was the owner. But his purported defense was that he hadn't been able to get the attention of the post office or people in charge of the problems on his route and that he, that, you know, he needed to take, and that he knew that he was being, and there was some indication that he knew that he was being monitored and so that he did this in order to call attention and then be able to, you know, have them listen to what his defense was. And if his whole purpose was just to get their attention, that, and the jury believed that, that would not be to permanently deprive, right? Your Honor, the evidence overwhelmingly showed that if the defendant was not arrested, he would have kept the money, and he, in doing so, would permanently deprive Gracie Wilson of the property. He spent the money. He delivered the letter to the wrong address, 1060. He probably bought some snacks. He could have put that back in and given it to her, right? Correct, Your Honor, but even I mean, I, you know, albeit perhaps not the most, you know, that a jury might have rejected it, if, if he was entitled to a specific intent instruction, he could have conceivably been acquitted, whereas without a specific intent instruction, the defense that he purported, you know, put forth, even if it wasn't, in your view, a very good defense, it had no avenue, right? Your Honor, the government's position is that the, the defendant's story was unbelievable in light of all the evidence to the contrary. So even if the jury was instructed that specific intent was required, there was no evidence showing that the defendant did not intend to permanently deprive the owner of the property. Right, but if specific intent were required, then you would, then the government would have had to prove that there was an intent to deprive. That is correct, Your Honor, and that is under the harmlessness standard. But the government wants to bring to this Court's attention that the Supreme Court internally at 414 squarely held that steals is not a common law term that imports larceny. Steals does not equal larceny, has never been equated with larceny, and is not restricted to the meaning of larceny, which would require specific intent to permanently deprive. And we must not interpret Section 1709 to undermine legislative intent. The legislature — That really goes back. That's not a response to the harmless error. That's a response to why the statute should be interpreted without specific intent. Yes, Your Honor. That's a response to why it shouldn't be — So it isn't really directly responsive to what Judge Wardlaw just asked you. It's a little bit of a lane change. Yes, Your Honor. Sarah, do you want to try again? Sure. The evidence was overwhelming, and it was uncontroverted. And under the standard of Nieder, the jury would still have found that the defendant did possess the specific intent to permanently deprive the owner of property. There was no evidence put forth by the defense showing that he intended to return that property. He spent the money. Is it clear that the failure to instruct on an element can be harmless? It is, Your Honor. And that was the spouse under Nieder, where the element was — where the issue was the jury was not instructed on materiality, the definition of what materiality was. And the Court found that that was harmless. Are you aware that a prior panel of our Court has actually said that Section 1709 requires felonious intent, although in an unpublished decision? Yes, Your Honor. I'm aware that that is an unpublished decision. And I don't think it answered the specific question in this case, which is what defendant says, the specific intent to permanently deprive the owner of the property. There are different kinds of specific intents. There are different kinds of felonious intent. Well, the footnote, too, in that decision, which, although it's unpublished and not binding, is a decision by a respected three-judge panel of our Court, says, a felonious intent to convert the property of another to one's own use is an essential element of an offense under both sections of 18 U.S.C. Section 1709. And then it cites Rush. Yes, Your Honor. So we're back to Rush, which the government's position is Rush got it wrong. No, we're back to how much did our panel, our prior panel, get it wrong, too, in relying on Rush, which it probably shouldn't have done in an unpublished decision, because obviously then we didn't have Ninth Circuit authority. But nevertheless, we did. But you can't cite it. And we can't cite it. You can cite it. It's persuasive, right? It's pre-19. It's pre-2007. It was a 1989 case, Your Honor. I don't think that that footnote squarely addressed the issue of whether specific intent to permanently deprive is required under Steele's, obstructs, or removes, which is a very narrow issue in this case. And the government would like to bring this to this Court's attention that in Anderson at 567, in interpreting 1709, this prior panel said Congress made unlawful virtually every act that could result in interference with the delivery of mail, which means embezzlement, stealing, abstracting, or removing. The Anderson court said that the provisions of 1709 are unambiguous on their face and that that, under the laws of statutory construction, our inquiry must end. The law of the canon of nociter astoces did not apply, and it should not apply to cloud the meaning of an ordinary word such as removes. The postal employee defendant, Henry Lee Monday, was in a position of trust, and he violated that when he opened the mail and when he removed things from the mail. I see my time is up, and unless this panel has any further questions, I shall submit. Thank you. Thank you. I'd just like to respond briefly to the point about position of trust. If we can't read 1709 to apply specifically to postal employee's position of trust because there's also 1708, which basically criminalizes the exact same actions and a little more, including possession of stolen mail, for members of the general public. For members of the general public, it also requires just abstracting or removing something from an article of mail. And this Court has interpreted 1708, albeit in an immigration case, Rondawa, to have every act under that statute categorically qualifies as a generic theft offense, which under this Court's precedent requires criminal intent to deprive the owners of the rights and benefits of ownership. And finally, quickly on Turley, that case which discussed the meaning of stolen in the National Vehicle Motors Act, Turley didn't hold that steals can never mean larceny. It only held that steals doesn't necessarily mean larceny. And in that case, it was about the stealing of cars and other motor vehicles, and it held that just restricting it to larceny wouldn't be appropriate because cars, it said, were uniquely susceptible to being stolen or taken by larceny, but also by embezzlement, if you take a rental car that you had lawful possession of, or even by false pretenses, if you take a car that you wrote a bad check for. So under the context of cars in that statute, steals stolen had a broad meaning. There's no reason for it to have such a broad meaning here because embezzlement is also covered under another portion of the statute, and false pretenses doesn't really apply to a postal employee who already has access or lawful possession of that item.
judges: Canby, Wardlaw, Callahan